IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EXPLORER INSURANCE COMPANY,<br>    *Plaintiff/Counter-Defendant*,<br><br>v.<br><br>NAGEL FARM SERVICE, INC.,<br>    *Defendant/Counter-Plaintiff, Third-Party Plaintiff*<br><br>v.<br><br>PENN MILLERS INSURANCE COMPANY<br>    *Third-Party Defendant* | Civil Action No.<br>24-1346-ABA |

**MEMORANDUM OPINION**

Plaintiff Explorer Insurance Company ("Explorer") filed this case seeking a declaratory judgment that it does not owe a duty to defend or indemnify Defendant Nagel Farm Service, Inc. ("Nagel") in a negligence case related to the death of one of Nagel's employees. Nagel filed a third-party complaint adding Penn Millers Insurance Company ("Penn Millers"), which was another of Nagel's insurers—including pursuant to an umbrella liability policy—as a third-party defendant, seeking a declaration that Penn Millers has a duty to defend Nagel in the negligence case, and to indemnify for any damages Nagel might incur. Penn Millers responded to the third-party complaint with, among other things, a counterclaim against Nagel for reimbursement of the costs that Penn Millers has incurred, or may incur, in defending Nagel. Presently pending is Nagel's motion to dismiss Penn Millers's counterclaim. ECF No. 45. For the reasons stated below, the Court will grant the motion to dismiss.

## BACKGROUND[1]

Nagel is a Maryland corporation that operates a commercial grain and farm supply business at various locations in Maryland. ECF No. 14 at 11 ¶ 24.[2] Bryan Dukes, a Nagel employee, was killed by electrocution while attempting to unload a truck filled with lime at a farm in Delaware. ECF No. 1 at 3 ¶ 9. The farm where the accident occurred is owned by Edward Steen, Susan Steen, Jesse Steen, and Steen Farms, LLC (the "Steens"). ECF No. 33 at 7 ¶ 32(c). Mr. Dukes's estate and relatives filed a negligence action in the Superior Court of Delaware against the Steens. ECF No. 1 at 3 ¶ 10. The Steens filed a third-party complaint against Nagel alleging a right of indemnification. *Id.* ¶ 11.

At the time of the accident, Nagel had several insurance policies, including a workers' compensation and employers liability policy issued by Explorer, *id.* at 2 ¶ 7, and a comprehensive agribusiness policy issued by Penn Millers that included umbrella coverage, ECF No. 33 at 3 ¶¶ 12-13. In pertinent part, the "Information Page" of the Explorer workers' compensation and employers liability policy states that it "applies to work in each" of the listed states. ECF No. 1-1 at 3. The list includes Maryland (where Nagel's business operates), but does not include Delaware (where Dukes was killed

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the [counterclaim] and draw all reasonable inferences in favor of the [non-movant]." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

[2] Page number references correspond to ECF pagination, which may differ from the pagination used by the parties.

while making a delivery on behalf of Nagel). *Id.* Elsewhere, however, the policy elaborates on the scope of coverage, including in Part 2.A, which states as follows:

> This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.
>
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
>
> 2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
>
> 3. Bodily injury by accident must occur during the policy period.
>
> 4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
>
> 5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

*Id.* at 9.

The Penn Millers Commercial Liability Umbrella Coverage policy is in the record at ECF No. 16-1 (policy declarations) and ECF No. 16-3 (Commercial Liability Umbrella Coverage Form). Two other Penn Millers-Nagel policies also are in the record: ECF No. 16-2 (Business Auto Coverage Form), and ECF No. 16-4 (Commercial General Liability Coverage Form). The question of whether there is a potential that the Commercial Liability Umbrella Coverage policy provides coverage for the Dukes negligence case turns, at least in part, on the terms of the Explorer policy. As Penn Millers puts it, and

Nagel does not appear to dispute, "[i]f it is determined that there is no coverage under the Employer's Liability coverage of the Explorer policy, then there also would be no coverage under the Penn Millers Umbrella coverage part as excess to the Employer's Liability coverage of the Explorer policy." ECF No 46-1 at 5; *see* ECF No. 16-3 at 3 (Employer's Liability provisions of the Penn Millers Commercial Liability Umbrella Coverage policy, providing that other than insofar as coverage is available pursuant to "underlying insurance," "the insurance provided under this Coverage Part for the employer's liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable 'underlying insurance', unless otherwise directed by this insurance").[3]

      Nagel tendered the Steens's third-party complaint to Explorer and Penn Millers for defense and indemnification pursuant to the policies. ECF No. 1 at 4 ¶ 12; ECF No. 33 at 11 ¶ 48. Both Explorer and Penn Millers issued denial letters asserting that they had no duty to defend or indemnify Nagel in the underlying action. ECF No. 14 at 9 ¶ 14; ECF No. 33 at 11 ¶ 49. Penn Millers, however, agreed to assume Nagel's defense in the underlying action under the umbrella coverage, under a reservation of rights. *Id*. Penn Millers issued its reservation of rights letter on May 14, 2024, which included a

---

[3] Nagel contends that the geographic limitations in the Explorer policy do not apply to the Penn Millers policy, because the Penn Millers umbrella policy defines its "[c]overage territory" as "anywhere in the world." ECF No. 16-3 at 15. The Court need not decide for purposes of this motion, and thus does not decide, whether the geographic scope of the Penn Millers umbrella policy is coextensive with, or broader than, the geographic scope of the Explorer policy.

statement that "Penn Millers reserves the right to seek reimbursement of all payments for defense fees and expenses from Nagel." ECF No. 43-1 at 3.

There are two key disputes between the parties with respect to coverage, at least insofar as are pertinent to the motion to dismiss Penn Millers's counterclaim. First, the parties dispute whether section 2.A.2 in the Explorer policy excludes coverage. Nagel contends that because Dukes's death occurred in Delaware while he was working for Nagel, the "bodily injury" arose "out of and in the course of" employment of Dukes that was "necessary or incidental" to Dukes's work *in Maryland. See* ECF No. 1-1 at 9 (coverage terms). Thus, Nagel contends, it has coverage—or at least the *potential* for coverage, sufficient to trigger a duty to defend—under the Explorer policy, and umbrella coverage under the Penn Millers policy. Explorer and Penn Millers contend that the policies only covered employees' injuries if they physically occurred in one of the states specified in section 3.A of the Information Page of the Explorer policy. *See id.* at 3.

Second, the parties dispute whether the indemnification damages sought by the Steens in the underlying action are recoverable. *See* ECF No. 1 at 4 ¶ 15(b). Explorer and Penn Millers contend that "Maryland law does not permit a third-party indemnification claim against an employer." ECF No. 14 at 15-16 ¶ 45 (quoting the May 8, 2024 Coverage Denial Letter). But Nagel asserts that under Delaware law, which Nagel claims applies (and which is the venue where the underlying case was filed), the indemnification claim is legally allowable. *Id.* at 16 ¶¶ 46-47.

Explorer filed its one-count complaint against Nagel in this Court on May 8, 2024, seeking a declaration that it does not owe Nagel duties to defend or indemnify in the underlying negligence action for the two reasons stated above. ECF No. 1 at 4 ¶ 15. Nagel answered the complaint and counterclaimed against Explorer seeking, among

5

other things, a declaratory judgment that Explorer does owe a duty to defend and indemnify Nagel. ECF Nos. 10 & 14. Explorer filed an answer to Nagel's counterclaim on July 31, 2025. ECF No. 19.

On July 30, 2024, Nagel filed a third-party complaint against Penn Millers seeking, among other things, a declaratory judgment that Penn Millers also has a duty to defend and indemnify Nagel in the underlying action. ECF No. 16. Penn Millers filed an answer to Nagel's third-party complaint on September 30, 2024. ECF No. 28. Penn Millers's answer included a counterclaim against Nagel and crossclaim against Explorer seeking reimbursement of defense costs. *Id.* On October 9, 2024, Nagel filed a motion to dismiss Penn Millers's counterclaim. ECF No. 29. Meanwhile, Explorer filed an answer to Penn Millers's crossclaim on October 14, 2024. ECF No. 30.

Nagel then filed an amended third-party complaint against Penn Millers that contained a demand for a declaratory judgment similar to the original third-party complaint. ECF No. 33. Nagel also filed a second amended answer to Explorer's complaint that again included a counterclaim against Explorer. ECF No. 35. Explorer filed its answer to the amended counterclaim on October 27, 2024. ECF No. 38. Penn Millers filed an answer to the amended third-party complaint on November 4, 2024. ECF No. 43. The answer again contained counterclaims against Nagel and Explorer for reimbursement of defense costs. *Id.* Apparently out of an abundance of caution, Nagel filed a second motion to dismiss Penn Miller's counterclaim for reimbursement, to which Penn Millers responded and Nagel replied. ECF Nos. 45, 46, and 47.

Nagel and Penn Millers agree that the operative motion to dismiss is the second one, filed at ECF No. 45. *See* ECF No. 37-1 at 4-5 (Penn Millers arguing that the first motion to dismiss is moot); ECF No. 47 at 2 (Nagel asserting that "the relevant filings

before the Court" are the briefs associated with the second motion to dismiss). Thus, the filings relevant to this opinion are: ECF No. 43 at 33-36 (Penn Millers's second counterclaim for reimbursement against Nagel); ECF No. 45 (Nagel's second motion to dismiss), ECF No. 46 (Penn Millers's response), and ECF No. 47 (Nagel's reply). The first motion to dismiss, ECF No. 29, will be denied as moot. Nagel has since filed motions for summary judgment against Explorer and Penn Millers. ECF Nos. 51 & 53. The filing of the motions for summary judgment does not render moot the pending motion to dismiss, however.

## LEGAL STANDARD

On a motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), courts apply the same standard of review applicable to a motion to dismiss a complaint. *See, e.g.*, *Bayles v. Marsh Realty & Assocs., LLC*, No. 20-cv-3322-DKC, 2021 WL 1198144, at *2 (D. Md. Mar. 30, 2021); *Sand Canyon Corp. v. Bank of New York Mellon*, No. 19-cv-2815-GLR, 2020 WL 5250288, at *2 (D. Md. Sept. 3, 2020); *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, No. 12-cv-2568-RDB, 2013 WL 6234598, at *3 (D. Md. Nov. 13, 2013). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a party asserts that, even assuming the truth of the alleged facts, the pleading fails "to state a claim upon which relief can be granted," that party may move to dismiss the pleading. Fed. R. Civ. P. 12(b) (6).

To withstand a motion to dismiss, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must contain sufficient factual allegations to state a facially plausible claim for relief, *id*. at 570. "A claim has facial plausibility when the

[non-movant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the [pleading] and draw all reasonable inferences in favor of the [non-movant]." *King*, 825 F.3d at 212.

## DISCUSSION

As explained above, Penn Millers's answer to Nagel's third-party complaint asserts a counterclaim against Nagel for reimbursement of defense costs that Penn Millers has incurred or may incur in defending Nagel in the underlying negligence case. ECF No. 43 at 33-36. In the counterclaim, Penn Millers asserts that "[t]here is no potential for coverage under the Penn Millers . . . Policy for the claims asserted in the Underlying Action" and that "Penn Millers has no duty to defend Nagel . . . in the Underlying Action." *Id.* at 33 ¶¶ 3-4. Specifically, Penn Millers asserts that "[i]f it is determined that there is no coverage under the Employer's Liability coverage of the Explorer policy, then there also would be no coverage under the Penn Millers Umbrella coverage part as excess to the Employer's Liability coverage of the Explorer policy"—and if there is no possibility of coverage, "then there would be no duty to defend the claims in the Underlying Action." *Id.* at 34 ¶¶ 9-10. Penn Millers continues that "[i]f there is no coverage under the Employer's Liability coverage part, and, thus, no duty to defend, Penn Millers is entitled to recover the costs of the defense of Nagel in the Underlying Action from Nagel—a right it reserved in its [May 14, 2024 reservation of rights] letter agreeing to provide a defense for Nagel." *Id.* at 35 ¶ 11.

Nagel has moved to dismiss Penn Millers's counterclaim, arguing that reimbursement of defense costs is not available because (1) the claims asserted against

8

Nagle give rise to at least "a potentiality that the claim[s] will be covered" and thus Penn Millers has a duty to defend; (2) where an insurer has a duty to defend, it may not seek reimbursement of defense costs, even if a determination is ultimately made that it does not have a duty to indemnify; and (3) even if insurers can sometimes retain a right to reimbursement of defense costs, Penn Millers has no such right here because the Penn Millers policy does not expressly provide for such right of reimbursement.

On the first point, Nagel is correct: Dukes's claims give rise to at least a potential of coverage under one or more of the Penn Millers policies. Under Maryland law, which applies here,[4] "the duty to defend is broader than the duty to indemnify," and "[d]oubts as to potential liability are resolved against the insurer." *Perdue Farms, Inc. v. Travelers Cas. and Surety Co. of America*, 448 F.3d 257 (4th Cir. 2006). And where an insured faces multiple causes of action, even if coverage would be unavailable under a subset of those claims, an insured must defend "if any claims potentially come within the policy coverage." *Id.* (quoting *Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373 (2000)). Here, Explorer alleges in its complaint that it has "no obligation to defend or indemnify Nagel Farm for the allegations and claims made in the Third Party Complaint [in the underlying action] because: a. the Policy's Employer's Liability coverage only applies to work in Maryland; and/or b. the indemnification damages sought by the Steens are not recoverable by law." ECF No. 1 at 4 ¶ 15. Penn Millers contends that it faces no potentiality of coverage either, for the same reasons, given that the umbrella coverage with respect to employer's liability incorporates the provisions, exclusions and

---

[4] "In insurance contract disputes, Maryland follows the principle of *lex loci contractus*, which applies the law of the jurisdiction where the contract was made." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013).

limitations of the underlying Explorer coverage. ECF No 46-1 at 5; ECF No. 16-3 at 3. In its answer and counterclaim, Nagel disputes both of these contentions.

As to the first reason for denial given by Explorer, Explorer's policy provides that the employer's liability insurance applies "to work in" various states, including Maryland (but not Delaware). ECF No. 1-1 at 3. The accident here occurred in Delaware, so Explorer contends the injury is not covered. ECF No. 1 at 4 ¶ 15. But the policy also provides that "[t]his employers liability insurance applies to bodily injury by accident" that "arise[s] out of and [is] in the course of the injured employee's employment" where "[t]he employment [is] *necessary or incidental* to your work in" Maryland. ECF No. 1-1 at 9 (emphasis added). In its counterclaim, Nagel points to this coverage provision. ECF No. 14 at 9 ¶ 16. Nagel concludes that "the Steen Third-Party Complaint pleads sufficient facts to determine that Mr. Dukes suffered a 'bodily injury' arising in the 'course of the injured employee's employment' and that Mr. Dukes' employment at the time of his injury was 'necessary and incidental to [Nagel Farm's] work' in Maryland." *Id.* at 10 ¶ 20.

This Court need not (and does not) decide at this time whether there is *in fact* coverage under the Penn Millers policy. The question is whether there is at least a potential for coverage, such that Penn Millers has a duty to defend. Here, there is such a potential. As discussed above, the Explorer policy contains geographic limitations, and specifies that coverage "applies to work in each" of the listed states, and Delaware, where the injury occurred, is not one of the listed states. ECF No. 1-1 at 3. But the policy also provides, "The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page." *Id.* at 9. Reading those provisions together, one possible interpretation is that, for coverage to apply, an injury

10

must *both* (a) occur within one of the specified states *and* (b) be "necessary or incidental" to an employee's work. Another possible interpretation is that so long as an employee's work is "necessary or incidental" to work in one of the specified states, coverage applies even if an injury occurs in another state. For purposes of Nagel's motion to dismiss Penn Millers's counterclaim, this Court need not resolve which of those interpretations controls. But both are sufficiently plausible that Nagel has shown that there is at least a potential that the fact that Delaware is not listed on the Information Page of the Explorer policy (ECF No. 1-1 at 3) will not render coverage under the Penn Millers umbrella policy unavailable.

As to the second reason for denial provided by Explorer (and relied upon by Penn Millers), Explorer's policy provides that "The damages we will pay, where recovery is permitted by law, include damages: 1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee." ECF No. 1-1 at 9-10. Explorer contends that "the indemnification damages sought by the Steens are not recoverable by Law," ECF No. 1 at 4 ¶ 15.b, because "Maryland law does not permit a third-party indemnification claim against an employer, absent a statute or express written contract granting a right of indemnification." ECF No. 14 at 15-16 ¶ 45 (quoting the May 8, 2024 Coverage Denial Letter).

Nagel argues that under the law of Delaware, where the underlying case was filed and where the accident occurred, the Steens's implied contract of indemnity claim is legally allowable, and that it is irrelevant to the viability of the Steens's claim whether such a claim would be cognizable under Maryland law. *Id.* at 16 ¶¶ 46-47. Nagel continues that in denying its motion to dismiss in the underlying case, "[t]he Delaware

11

Superior Court found that the Steen Third-Party Complaint alleged facts sufficient to plead a cause of action against Nagel Farm for breach of an implied contract of indemnity, under which theory Delaware law permits a third-party to recover damages against an employer, even absent a statute or express written contract." *Id.* at 16 ¶ 49. Nagel concludes that "[t]he plain language of the Explorer Policy . . . does not limit coverage to only those damages permitted by Maryland law." *Id.* at 18 ¶ 53. Instead, coverage is limited to "where recovery is permitted by law," ECF No. 1-1 at 9. Nagel argues that under the applicable Delaware law, recovery is potentially permitted, as the Delaware Superior Court has held in the underlying case.[5] Even if Maryland law applies to questions of coverage at issue in this case, the Delaware court has concluded that Delaware law applies to the Dukes plaintiffs' claims against the Steens (or at least to implied contract of indemnity claim), and that such claim is cognizable under Delaware law. This Court need not decide, at least at this time, whether Delaware law *in fact* applies to that claim, because only the duty to defend is presently at issue. Nagel has shown that there is at least a potentiality that Delaware law applies to the Steens's implied contract of indemnity claim and that such a claim is at least arguably permitted by Delaware law, and thus that there is a duty to defend with respect to the implied contract of indemnity claim.

For these reasons, Penn Millers's allegation that "[t]here is no potential for coverage," ECF No. 43 at 33 ¶ 3, is incorrect. *Perdue Farms* holds that Penn Millers has a duty to defend against "any claims that potentially come within the policy coverage." 448 F.3d at 257; *see also Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368,

---

[5] It appears that neither policy contains a choice-of-law clause.

12

372 (4th Cir. 2006) (providing that under Maryland law, "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy") (quoting *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1 (2004)).

      This is also confirmed by Penn Millers's own reservation-of-rights letter, in which it admitted repeatedly that there is a potential for coverage. ECF No. 43-1 at 2 ("Penn Millers has determined that *there may be a potential for coverage* for this claim under the Employer Liability coverage and will assume the defense of Nagel.") (emphasis added); *id.* at 3 ("In light of the conflicting coverage positions taken by the parties . . . and *the apparent potential for coverage* under the Explorer Employee Liability coverage, Penn Millers will provide a defense to Nagel.") (emphasis added); *id.* at 18 ("Penn Millers . . . has determined that *there is a potential for coverage* under the Employer Liability coverage part of the Explorer Policy"; "[t]he allegations of the [underlying third-party complaint] *may potentially come within the exception* to the Employers Liability policy exclusion for contractual liability.") (emphasis added); *id.* at 19 ("[I]t appears to Penn Millers that the claims in the [underlying third-party complaint] *potentially may be covered* under the Employers Liability policy.") (emphasis added); *id.* at 21 ("Penn Millers has determined that *there may be a potential for coverage* for this claim under the Employer Liability coverage and will assume the defense of Nagel"; "In light of the conflicting coverage positions taken by the parties . . . and *the apparent potential for coverage* under the Explorer Employee Liability coverage, Penn Millers will provide a defense to Nagel.").

      This leads to the next question: whether, in the event it were determined that Penn Millers has no duty to *indemnify* Nagel, would it at that time have a right to obtain reimbursement from Nagel of the costs it incurred in defending Nagel? As the Fourth

13

Circuit explained in *Perdue*, "[w]hile jurisdictions differ on the soundness of an insurer's right to reimbursement of defense costs," the insurer in that case had not "identified a single Maryland case that extends this right to insurers." 448 F.3d at 258. The court in *Perdue* then held that there was no right to reimbursement for claims that ultimately were not covered. *Id*. at 258-59.

Like Travelers in *Perdue*, Penn Millers has not identified any Maryland law authorizing insurers, although under a duty to defend (based on the potentiality of coverage), to recoup defense costs from an insured if it is later determined that coverage is unavailable. *See* ECF No. 46-1 at 5-8. This Court also has not identified any Maryland cases contradicting *Perdue*. The closest case Penn Millers cites is *Applied Signal & Image Tech., Inc. v. Harleysville Mut. Ins. Co.*, which is based on Maryland law. 252 F. Supp. 2d 215, 218 (D. Md. 2003). In that case, the court held that the insurer (Harleysville) "did not expressly reserve its right to seek reimbursement of defense fees if it was later determined that there was no duty to indemnify," and therefore "Harleysville cannot now withdraw its agreement to pay the defense fees incurred by ASIT," the insured. *Id.* (footnote omitted). Penn Millers argues that the only way to logically interpret this statement is that if Harleysville *had* reserved the right, the court would have enforced it. But the issue of whether an insurer could retain a right to reimbursement of defense costs from the insured was not before the court in *Applied Signal* and that court had no reason to opine on whether such a right actually existed. That court merely held that Harleysville had not attempted to reserve the right, so the court's analysis ended there. At a minimum, this one unclear statement in a district court opinion does not overrule the clear holding of *Perdue Farms*.

14

The rest of the cases Penn Millers cites to support its arguments are not based on Maryland law and are, therefore, not relevant. Penn Millers does cite a Fourth Circuit case, *Penn-Am. Ins. Co. v. Mapp*, but that case relied on Virginia law. 521 F.3d 290, 292 (4th Cir. 2008). In *Mapp*, the Fourth Circuit concluded that "if this Court thereafter rules that the duty to defend issue was improperly resolved against [the insurer] Penn-America in the district court, Penn-America could, pursuant to its reservation of rights with respect to the defense of [the insured] ACH in the [underlying] Action, seek reimbursement of its defense costs." *Id.* at 297-298. Again, this case does not speak to the state of Maryland law.

Penn Millers also cites *Westchester Fire Ins. Co. v. Wallerich,* in which the Eighth Circuit noted that "[n]umerous courts recognize an insurer's right to reimbursement of defense fees paid where it is determined that the insurer had *no duty to defend*," and that "many cases refer to this holding as the majority position." 563 F.3d 707, 714 (8th Cir. 2009) (quoting *Westport Ins. Corp. v. Ong*, No. 1:07CV10DAK, 2008 WL 892941, at *4 (D. Utah Mar. 28, 2008) (emphasis added). But that was a different issue than the one presented here. Here, Penn Millers contends that even if it has a duty to *defend*, it should be permitted to seek reimbursement of defense costs if it is later determined to not have a duty to *indemnify*. And even on the issue that was presented in *Westchester Fire*, the Eighth Circuit noted that the Fourth Circuit followed the minority view that there was no right to reimbursement. *Id.* at 715. The Eighth Circuit ultimately denied the reimbursement claim because the right was only reserved in a letter and not the contract, as is also the case here. *Id.* at 719 ("[A]lthough Minnesota appellate courts have not announced whether they would permit a right of reimbursement, we find the most recent state and federal court decisions' adoption of the minority position more

15

persuasive. Here, Westchester could have included in the policy an express provision for such reimbursement. Westchester cannot now unilaterally amend the policy by including the right to reimbursement in its reservation-of-rights letter."); *see also Utica Mut. Ins. Co. v. Rohm & Haas Co.*, 683 F. Supp. 2d 368, 372-73 (E.D. Pa. 2010) (providing that under Pennsylvania and Illinois law, where insurance companies may reserve the right to reimbursement of defense costs in the insurance policy, "[c]ourts . . . have refused to recognize claims by insurers for the reimbursement of defense costs expended under a unilateral reservation of rights, absent a provision for such reimbursement in the applicable insurance policy").

Finally, Penn Millers cites the California case of *Buss v. Superior Court*. In that case, the Supreme Court of California held that "[u]nder the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs." 16 Cal. 4th 35, 51 (1997). The reasoning in *Buss*, however, was expressly rejected in *Perdue Farms*, 448 F.3d at 258 and in *Westchester Fire Ins. Co.*, 563 F.3d at 715, and in any event, the present case does not present claims "that are not even potentially covered."

Penn Millers contends that *Perdue Farms* does not control because it involved a situation where *some* claims were covered and some were not. ECF No. 46-1 at 7-8. Here, argues Penn Millers, *no* claims are covered. *Id.* That may be Penn Millers's allegation in the counterclaim, but as discussed above, the pleadings, even taken in the light most favorable to Penn Millers, show that the claims against Nagel "potentially come within the [Penn Millers] policy coverage." *Perdue Farms*, 448 F.3dat 257. And the *Perdue* court's holding was broader than whether an insurer is precluded from

*partial* reimbursement of defense costs; it held squarely that Maryland law does not permit any insurer reimbursement of defense costs when an insurer is under a duty to defend, but ultimately not under a duty to indemnify. *Id.* at 258-59.

The claims against Nagel in the underlying action are potentially covered by one or more of the Penn Millers policies and, thus, under *Perdue Farms*, Penn Millers may not seek reimbursement from Nagel for defense costs, even if it is ultimately determined that Penn Millers is not liable to indemnify Nagel for a judgment or settlement.[6]

## CONCLUSION

For the reasons provided above, Nagel's motion to dismiss Penn Millers's counterclaim for reimbursement of defense costs will be granted and the counterclaim will be dismissed. A separate order follows.

Date: June 30, 2025                                /s/
                                                   Adam B. Abelson
                                                   United States District Judge

---

[6] Having reached these conclusions, which dispose of Nagle's motion to dismiss Penn Millers's counterclaim, the Court need not and does not decide either (1) whether Penn Millers has a right of reimbursement from Explorer, or (2) whether, to have a right of reimbursement, Penn Millers would have had to expressly reserve such a right in its policies.